1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8                       EASTERN DISTRICT OF WASHINGTON

9   LISA A. HATTENBURG,

10                    Plaintiff,          NO.  CV-04-428-MWL

11        v.                              ORDER GRANTING DEFENDANT'S
                                          MOTION FOR SUMMARY JUDGMENT
12  JO ANNE B. BARNHART,
    Commissioner of social
13  Security,

14                    Defendant.

15      BEFORE THE COURT are cross-Motions for Summary Judgment, noted

16  for hearing with oral argument on August 18, 2005. (Ct. Rec. 12,

17  16.) Attorney Rebecca M. Coufal appeared for the plaintiff; Special

18  Assistant United States Attorney David M. Blume appeared for the

19  defendant. The parties have consented to proceed before a magistrate

20  judge. (Ct. Rec. 7.)  After reviewing the administrative record,

21  the briefs filed by the parties, and hearing the arguments of

22  counsel, the court **GRANTS** Defendant's Motion for Summary Judgment

23  (Ct. Rec. 16) and **DENIES** Plaintiff's Motion for Summary Judgment

24  (Ct. Rec. 12).

25      Plaintiff filed a protective application for supplemental

26  security income benefits ("SSI") on May 16, 2000. (Tr. 25.) Her

27  claim was denied. The Appeals Council remanded the case on September

28

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
                - 1

5, 2003 because the hearing tapes had been lost. (Id.) A new hearing was held on February 13, 2004. The Administrative Law Judge (hereinafter, "ALJ,") R.J. Payne, denied benefits in a decision issued on April 2, 2004. (Tr. 26, 35.)  The Appeals Council denied review. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## ADMINISTRATIVE DECISION

The ALJ found that plaintiff had not engaged in substantial gainful activity after her alleged onset date of August 22, 1998. (Tr. 33.) The ALJ found that plaintiff suffers from severe physical impairments, including a fractured pelvis and femur and a closed head injury as a result of a car accident in 1998. (Id.) The ALJ found that plaintiff's impairments do not meet or medically equal the Listings. (Id.) The ALJ found that plaintiff retains the residual functional capacity for a wide range of light and sedentary work with little or no limitation caused by psychological impairments. (Tr. 34.) The ALJ found that plaintiff had no past relevant work. (Id.) Relying on the testimony of a vocational expert, the ALJ found that plaintiff could perform unskilled jobs existing in significant numbers, such as a hand packer, an assembler, and a packaging and filling machine operator. (Tr. 32.)  The ALJ found that Plaintiff was not disabled. (Tr. 35.)

## STANDARD OF REVIEW

The standard for review by this Court is set forth In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

> A district court's order upholding the Commissioner's denial of benefits is reviewed de novo.

*Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).
<u>Step 1</u>: Is the claimant engaged in substantial gainful activities?  20 C.F.R 404.1520(a)(4)(i), 416.920(a)(4)(i).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 3

1   If so, benefits are denied. If not, the decision maker
    proceeds to step two.
2        Step 2: Does the claimant have a medically severe
    impairment or combination of impairments? 20 C.F.R.
3   404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does
    not have a severe impairment or combination of impairments,
4   the disability claim is denied. If the impairment is severe,
    the evaluation proceeds to step three.
5        Step 3: Does the claimant's impairment meet or equal one
    of the listed impairments acknowledged by the Commissioner
6   to be so severe as to preclude substantial gainful activity?
    20 C.F.R. 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R.
7   404 Subpt. P, App. 1. If the impairment meets or equals a
    listed impairment, the claimant is conclusively presumed to
8   be disabled. If the impairment does not meet or equal a
    listed impairment, the evaluation continues to step four.
9        Step 4: Does the impairment prevent the claimant from
    performing past relevant work? 20 C.F.R. 404.1520(a)(4)(iv),
10  416.920(a)(4)(iv). At this step, the decision maker
    determines the claimant's residual functional capacity. If
11  the claimant can perform past relevant work, the claimant is
    not disabled. If the claimant cannot perform past work, the
12  decision maker continues to step five.
         Step 5: Is the claimant able to perform other work in
13  the national economy considering age, education, work
    experience and residual functional capacity? 20 C.F.R.
14  404.1520(a)(4)(v), 416.920(a)(4)(v).

15       The claimant bears the initial burden of proving
    disability. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
16  1999). This requires the presentation of "complete and
    detailed objective medical reports of h[is] condition from
17  licensed medical professionals." *Id.* (citing 20 C.F.R. §§
    404.1512(a)-(b), 404.1513(d)). At step five, the burden
18  shifts to the Commissioner to show that (1) the claimant can
    perform other substantial gainful activity; and (2) a
19  "significant number of jobs exist in the national economy"
    which claimant can perform. *Kail v. Heckler*, 722 F. 2d 1496,
20  1498 (9th Cir. 1984).

21                          **ISSUES**

22       The general issue raised is whether there is substantial

23  evidence to support the ALJ's decision to deny benefits and, if

24  so, whether that decision was based on proper legal standards. The

25  issues raised by the plaintiff are whether the ALJ properly

26  evaluated the testimony of lay witnesses, properly required that

27  they testify by affidavit, properly determined that plaintiff's

28
ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
                 - 4 -

mental impairments are not severe, properly weighed the opinion of an examining physician, posed a complete hypothetical to the vocational expert, and properly determined the adequacy of the record.

### ADMINISTRATIVE HEARING

Plaintiff was 35 years old on the date of the decision. (Tr. 26.) She lived with her son and her boyfriend. Plaintiff obtained a high school diploma. (Tr. 506.) She no longer has a driver's licence because of unpaid tickets, so she relies on friends, family and the bus. (Tr. 507.) Plaintiff indicated that her worst problem is not liking to leave the house. (Tr. 508.) She feels that not remembering things and hip pain prevent her from working. She is also bothered daily by cramping in her left foot, a little anxiety and getting angry a lot. (Id.) On the hearing date plaintiff had been taking effexor for one day. (Tr. 509.) She can stand for 20 minutes, but her left foot cramps and she has hip pain after standing. (Tr. 510.) Plaintiff can sometimes walk "a long way." (Id.) She can sit for 20 minutes and is able to lift a gallon of milk. (Tr. 511.) Plaintiff was taking no pain medication except advil or other over-the-counter medication. (Tr. 513.)

Her activities include taking care of her son, helping him with homework, and getting him ready for school. (Tr. 514-15.) Plaintiff plays computer games several hours daily, does laundry, vacuums, washes dishes, cooks, and watches television several hours a day. (Tr. 515-17.) Twice monthly she has a difficult time making herself get out of bed. (Tr. 524.)

**ANALYSIS**

1.Evaluating lay testimony

Plaintiff alleges that the ALJ erred by failing to properly credit the testimony of the lay witnesses, plaintiff's boyfriend, mother, and sister, and erred by requiring that these witnesses appear by affidavit rather than subject to cross-examination. (Ct. Rec. 13 at 5-7.) The Commissioner responds that the ALJ gave little weight to the lay witness testimony because it was contradicted by the medical evidence, and that plaintiff's counsel agreed to submitting lay testimony by affidavit, thereby waiving any challenge to the procedure. (Ct. Rec. 17 at 8-10.)

The Commissioner is correct that plaintiff agreed to submit lay testimony by affidavit due to time constraints. (Tr. 533.) Any argument with respect to the procedure is therefore waived.

The ALJ did not ignore the evidence presented by the lay witnesses, rather he found that it was entitled to little weight because it was unsupported by the medical evidence. (Tr. 30.) As an example, the ALJ observes that while the plaintiff's boyfriend described "bladder urgency," this does not appear in the medical record or in plaintiff's testimony. (Id.) In her reply brief plaintiff asserts that Dr. Moise's report dated February 25, 2002 states that petitioner has "an overactive bladder." (Ct. Rec. 18 at 1; Tr. 445.) Plaintiff also points to a clinic note dated January 21, 2003 indicating that she had a urinary tract infection that day. (Ct. Rec. 18 at 1-2; Tr. 456-57.) The ALJ is correct that this evidence does not support the lay witness testimony that bladder urgency is a disabling limitation. In fact, the first statement from

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 6

Michael Clark states that "Lisa has lost control of her bladder" and there are times when he is driving and has to pull over for her to go to the bathroom. (Tr. 163.) Two years later he merely notes that she has to get up to urinate 3 to 4 times a night. (Tr. 173.) Similarly, plaintiff's mother describes accidents when plaintiff was unable to get to the restroom quickly enough, and problems of bladder and bowel control. (Tr. 171.) Plaintiff's sister describes her as "having to use the restroom immediately." (Tr. 174.) On February 25, 2002, Dr. Moise indicated that plaintiff would not need to take unscheduled breaks during an 8 hour working day except to use the toilet every 1-2 hours. (Tr. 445.) The need of plaintiff to urinate more frequently than normal did not rise to the level where Dr. Moise believed it appropriate to answer "yes" to the question "will your patient need to take unscheduled breaks during an 8 hour working day?" (Id.) Because the medical evidence does not support this testimony, the ALJ correctly gave it little weight.

The ALJ is also correct that nowhere in her testimony does plaintiff describe complaints related to bladder urgency. The ALJ's determinations are supported by clear and convincing evidence and are germane to each witness. Accordingly, the ALJ's weighing of the lay testimony must be affirmed. *See* Lewis v. Apfel, 236 F. 3d 503, 511 (9th Cir. 2001); *Smollen v. Chater*, 80 F. 3d 1273, 1288 (9th Cir. 1999).

### 2. Finding Mental Impairment Non-Severe

Plaintiff contends the ALJ erred by determining that she did not have a severe mental impairment. (Ct. Rec. 6 at 12.) The Commissioner argues that the ALJ's determination is supported by the

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 7 -

1  medical evidence. (Ct. Rec. 17 at 11.)

2      At step two of the sequential process, the ALJ must determine
3  whether Plaintiff suffers from a "severe" impairment, one which has
4  more than a slight effect on the claimant's ability to work. To
5  satisfy step two's requirement of a severe impairment, a Plaintiff
6  must prove the existence of a physical or mental impairment by
7  providing medical evidence consisting of signs, symptoms, and
8  laboratory findings; the Plaintiff's own statement of symptoms alone
9  will not suffice. 20 C.F.R. §416.908. The effects of all symptoms
10 must be evaluated on the basis of a medically determinable
11 impairment which can be shown to be the cause of the symptoms. 20
12 C.F.R. §416.929. An overly stringent application of the severity
13 requirement violates the statute by denying benefits to plaintiffs
14 who do meet the statutory definition of disabled. See *Corrao v.*
15 *Shalala*, 20 F. 3d 943, 949 (9th Cir. 1994).

16     The Commissioner has passed regulations which guide dismissal
17 of claims at step two. Those regulations state that an impairment
18 may be found to be not severe *only* when evidence establishes a
19 "slight abnormality" that has "no more than a minimal effect on an
20 individual's ability to work." *Yuckert v. Bowen*, 841 F. 2d 303, 306
21 (9th Cir. 1988)(citing Social Security Ruling 85-28). The ALJ must
22 consider the combined effect of all of the Plaintiff's impairments
23 on the ability to function, without regard to whether each alone is
24 sufficiently severe. See 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991).
25 The step two inquiry is a *de minimis* screening device to dispose of
26 groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-
27 54.

28
ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 8

Plaintiff suffered a scalp laceration and other injuries from the car accident in August of 1998. (Tr. 182.) On September 3, 1998, doctors performed surgery. (Tr. 198.) Thereafter it was noted that plaintiff was "just a little bit whiny, fussy, and childlike. This may reflect some head injury and/or medication effect." (Tr. 203.)

On October 21, 1998, treating physician Vivian Moise, M.D., noted that following surgery and medical stabilization, plaintiff was transferred to St. Luke's Rehabilitation Institute. (Tr. 304.) Her discharge summary indicates that plaintiff's cognitive skills "have improved dramatically." (Tr. 305.) Dr. Moise indicates that plaintiff's initial CT scan was negative, and at the time of discharge her cognitive skills appear to be essentially normal. (Id.) Dr. Moises recommended neuropsychological tests in 1 to 2 months, especially before any school or work pursuits. Plaintiff had functional attention skills and normal results on perceptual skills testing. (Tr. 306.)

On December 2, 1998, Dr. Moise states that plaintiff has a significant anxiety disorder; however, after being discharged home, plaintiff was noncompliant with her medication, including buspar, and with her physical therapy. (Tr. 332.) Plaintiff's appearance was so lethargic that Dr. Moise "seriously question[ed] whether she might be taking some type of sedating substance." (Id.) The majority of this appointment was spent with Dr. Moise lecturing plaintiff about her "poor motivation and poor compliance." (Id.) Dr. Moise prescribed a built up shoe to address plaintiff's leg length discrepancy. (Tr. 333.)

On January 15, 1999, plaintiff told Dr. Moise she wanted to be

put on buspar again because she realized that she "did better on the medication." (Tr. 340.) Dr. Moise did not see plaintiff for nine months, until October 15, 1999. (Tr. 344.) Plaintiff said she was interested in vocational rehabilitation, had again stopped taking buspar, and again wanted a prescription for it. Dr. Moise notes that plaintiff had mild cognitive residuals. She opined that plaintiff was unemployable at that time but did not think that she qualified for total permanent lifelong disability. She referred plaintiff to the Department of Vocational Rehabilitation. (Id.) As the ALJ notes, Dr. Moise also found that plaintiff could perform work at the sedentary level. (Tr. 27; 346.) She expected impairments to last 6 to 12 months. (Id.)

On July 8, 2000, plaintiff was examined by Fred Price, D.O. She was taking buspar. Plaintiff said that she cared for herself and her child with little to no difficulty. (Tr. 348-49.) Her activities including watching television, doing housework, occasionally visiting her aunt, cooking dinner and working puzzle books. (Tr. 349.) Plaintiff said she had problems with her memory, gets frustrated and has anger management problems. (Id.) Dr. Price notes she was vague about her activities. (Tr. 350.) Dr. Price felt that at that time plaintiff was a poor candidate for employment but that "education, skills training, and vocational activities are certainly appropriate over the next 1 to 3 years." He questioned whether her mental health concerns were completely resolved at that time, but felt that she could perform work at a light or sedentary level. (Tr. 353-54.)

Two days later Thomas McKnight, Ph.D., evaluated plaintiff.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 10

1  (Tr. 355.) Dr. McKnight notes that records from St. Luke's show
2  "severe anxiety" which was reportedly well controlled with
3  medication. (Tr. 356.) Plaintiff denied ever having had any mental
4  health treatment or evaluations. (Id.) She described her activities
5  as going to the park with her son, watching television and said that
6  she enjoyed watering her yard. Her affect was rather flat and there
7  was no indication of anxiety. Dr. Price opines that "her effort was
8  questionable on more than one occasion." (Tr. 357.) Her testing
9  results were inconsistent. (Tr. 359.) She appeared to have some
10 reduced memory function. (Id.) Dr. McKnight opined that plaintiff
11 should have no difficulty doing jobs involving 2-3 step repetitive
12 tasks. He felt that referrals to DVR and for a chemical dependency
13 evaluation were appropriate. (Id.) Dr. McKnight assessed a GAF of
14 61-70. (Tr. 360.)

15       On January 15, 2002, plaintiff underwent a DVR examination. She
16 reported that she had not seen a doctor in two years. (Tr. 417.)
17 Plaintiff said she was taking buspar but had trouble remembering and
18 concentrating. (Tr. 418.)

19       The testifying expert at the hearing, Ronald Klein, Ph.D.,
20 opined that the medical evidence shows an impairment that would only
21 mildly affect activities of daily living, meaning a non-severe
22 mental impairment. (Tr. 497.)

23       The opinion of a non-examining physician may constitute
24 substantial evidence if it is supported by other evidence and is
25 consistent with it. *Andrews v. Shalala*, 53 F. 3d 1035, 1043 (9th Cir.
26 1995); *Lester v. Chater*, 81 F. 3d 821, 830-31 (9th Cir. 1995). The
27 opinion of a non-examining physician cannot by itself constitute

28

substantial evidence that justifies the rejection of either an examining or a treating physician. *Lester*, at 831 citing *Pitzer v. Sullivan*, 908 F. 2d 502, 506 n. 4 (9th Cir. 1990). An ALJ may reject the opinion of a physician if it is brief, conclusory, and unsupported by clinical findings. *Matney v. Sullivan*, 981 F. 2d 1016, 1019 (9th Cir. 1992).

Plaintiff presented *de minimus* evidence of a severe mental impairment. Plaintiff discussed her daily activities and interpersonal relationships with several doctors. After administering tests and observing plaintiff, treating and examining doctors felt plaintiff's cognitive limitations were mild.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Edlund v. Massanari*, 253 F. 3d 1151, 1156 (9th Cir. 2001). Here the ALJ's finding that plaintiff's mental impairments are not severe is fully supported by the record.

### 3. Weighing Examining Physician's Opinion

Plaintiff alleges that the ALJ failed to properly credit the June 2, 2003, opinion of examining physician John McRae, Ph.D. (Ct. Rec. 13 at 9.) The Commissioner responds that the ALJ properly accepted Dr. McRae's opinion that plaintiff could "carry out simple work instructions and tasks" and included these limitations in his hypothetical to the vocational expert. (Ct. Rec. 17 at 17-18.)

Dr. McRae diagnosed major depression, recurrent, without psychotic features and with anxiety symptoms. (Tr. 452.) Plaintiff's testing showed good cognitive function. (Tr. 451.)

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 12

Plaintiff's score on the Beck Inventory II was 35. (Id.) Dr. McRae assessed a GAF of 45 (Tr. 452.) Both Dr. McKnight and Dr. McRae examined plaintiff and conducted mental status examinations. Dr. McRae additionally administered the Beck Depression Inventory-II test and apparently based on the results of that test diagnosed major depression. The ALJ had to weigh and assess the different opinions of Drs. McKnight and McRae.

The issue of depression had been raised to both treating and examining doctors and no other doctor opined that plaintiff was depressed or that testing for depression should be done. Dr. Klein pointed out that a Beck score alone is insufficient to support a diagnosis of major depressive disorder, and this is the opinion of those who published the test. (Tr. 503.) The ALJ notes that Dr. McRae is alone in his assessment that plaintiff is markedly limited in her ability to make decisions. (Tr. 28.)

At the hearing Ms. Coufal urged that at a minimum, this case should be remanded for testing for depression. The ALJ in this case was required to resolve the conflicting medical testimony on the issue of depression. The only evidence of depression is in the form of Dr. McRae's opinion, an opinion apparently based on the use of the Beck Inventory, which itself is not sufficient to sustain a diagnosis of depression. No treating physician or other doctor thought plaintiff needed treatment or testing for depression. Where, as here, the record is sufficient for the ALJ to make a determination, remand is unnecessary.

An opinion based on the self-reporting of an unreliable person, evidence of exaggerating symptoms, and daily activities

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 13

that are inconsistent with assessed impairments are all specific and legitimate reasons to reject an examining physician's opinion. *See Flaten v. Secretary of Health & Human Services*, 44 F. 3d at 1463-64; Andrews v. Shalala, 53 F. 3d 1035, 1042-43 (9th Cir. 1995). The ALJ gave specific and legitimate reasons supported by substantial evidence in the record for discounting some of Dr. McRae's opinions. Accordingly, the ALJ's determination must be affirmed.

### 4. Hypothetical to the Vocation Expert

Plaintiff essentially reargues that the ALJ failed to properly weigh the lay testimony and the medical opinions and that this resulted in a hypothetical which failed to include all of plaintiff's impairments.

Though in his initial hypothetical to the VE the ALJ referenced normal breaks in an 8 hour day (Tr. 526), later the ALJ posed a second hypothetical based on the RFC completed by Dr. Moise that included the need for restroom breaks every 1-2 hours. (Tr. 529.) The VE opined that if the breaks were within tolerable levels, the number of available jobs would not be affected. (Id.) As noted, the ALJ properly weighed all of the evidence and presented a hypothetical which included the impairments established by competent evidence. The ALJ corrected the error in the first hypothetical when he posed the second. Because there is no error in the second hypothetical question, the ALJ's step five determination should be affirmed.

### CONCLUSION

1. Plaintiff's Motion for Summary Judgment (Ct. Rec. 12)is

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
- 14

1   **DENIED.**

2        2. Defendant's Motion for Summary Judgment (Ct. Rec. 16) is

3   **GRANTED.**

4        3. Any application for attorney fees may be filed by separate

5   Motion.

6        4.  The District Court Executive is directed to file this

7   Order and provide a copy to counsel for plaintiff and defendant.

8   Judgment shall be entered for defendant and the file **CLOSED.**

9            **DATED** this 23rd day of August, 2005.

10

11                         s/ Michael W. Leavitt

12                         MICHAEL W. LEAVITT
13                         UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
    ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT
             - 15